UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VINCENT KROCKA,

    Plaintiff,

v.                                                      Case No. 8:04-cv-2437-T-23MSS

CAL HENDERSON, *et al.*,

    Defendants.

_____/

## **O R D E R**

Krocka's section 1983 civil rights complaint alleges that the defendants are violating Krocka's civil rights while he is confined in the Hillsborough County Jail. Defendant Rita Peters moves for dismissal (Doc. 5), which Krocka opposes (Doc. 22). Defendants Henderson, Parrish, Lucas, Hall, Griffiths, and Fleet move for dismissal (Doc. 6), which Krocka opposes (Doc. 30). This court concludes that the motions are meritorious, but Krocka will have an opportunity to file an amended complaint.

In resolving a challenge that asserts the complaint's failure to state a claim, the court should construe the material allegations favorably to the non-moving party. *Kirby v. Siegleman*, 195 F.3d 1285, 1289 (11th Cir. 1999). An especially lenient standard applies to allegations in a *pro se* complaint. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam), *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995). However, Krocka is not the typical *pro se* inmate-litigant; he is an attorney.

Krocka is confined in the Hillsborough County Jail awaiting trial on pending criminal charges.  Pretrial detainees enjoy the protections afforded by the Due Process Clause of the Fourteenth Amendment, which ensures that no state shall "deprive any person of life, liberty or property, without due process of law."  U.S. Const. Amend. XIV.  Consequently, Krocka's claims are properly construed as Fourteenth Amendment claims challenging the conditions of his confinement as a pretrial detainee.

Although the Eighth Amendment, through the Due Process Clause of the Fourteenth Amendment, forbids states from inflicting cruel and unusual punishment on convicted offenders, punishment of a pretrial detainee based on pending charges violates the Due Process Clause.  *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S. Ct. 1861 (1979), teaches that pretrial detainees can be subjected to conditions and restrictions of a detention facility so long as those restrictions do not amount to punishment or otherwise violate the Constitution.  "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Bell v. Wolfish*, 441 U.S. at 539.  Courts have borrowed Eighth Amendment principles in shaping standards applicable to pretrial detainees.  *Hamm v. DeKalb County,* 774 F.2d 1567, 1573-74 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986).

To prevail on a claim that the conditions of confinement violate the Due Process Clause, a prisoner must meet both the objective and subjective elements of the test for cruel and unusual punishment under the Eighth Amendment.  First, to meet the objective prong, an inmate must show that the deprivation caused by the official's act or

omission is sufficiently serious to result in the denial "of the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Second, the subjective prong requires that an inmate demonstrate that prison officials acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). The level of deliberate indifference required on the part of officials depends not on its effect on the prisoner, but on the constraints facing the official. Deliberate indifference requires both an official's awareness of the condition and the official's ability to do something about the condition.

The objective component of an Eighth Amendment claim is "contextual." *Hudson v. McMillian,* 503 U.S. 1, 4 (1992). In *Wilson* the Supreme Court held that:

> Some conditions of confinement may establish an eighth amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise--for example, a low cell temperature at night combined with a failure to issue blankets.

501 U.S. at 304. Under this "contextual" approach, however, conditions that might be deemed cruel and unusual if permanent features of a detainee's life may not offend the Constitution if imposed only temporarily. "A filthy, overcrowded cell and a diet of 'grue[l]' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney,* 437 U.S. 678, 686-87 (1978).

Moreover, under the Prisoner Litigation Reform Act (PLRA) an actual physical injury must be shown: "No Federal civil action may be brought by a prisoner confined in

a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 USCA § 1997e(e). Krocka has not specified that he suffered any actual injury or that he was subjected to an excessive risk of harm as required by *Farmer.* Because Krocka has not shown that he suffered an actual physical injury or that he was exposed to a substantial risk of harm, he fails to meet the objective prong of the test for constitutional violations, as discussed above.

Krocka alleges a litany of abuses, but most of the allegations do not state a constitutional violation; confinement necessarily restricts the constitutional freedoms and protections of inmates and pretrial detainees. Consequently, the defendants violate no protected right by shackling Krocka when outside his cell, eating in his cell, or "locked-down" in segregated housing for his personal protection.[1] The detention officials must provide humane conditions of confinement and reasonably guarantee the safety of the inmates. However, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547(1979). *See LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994). Although "not insulat[ing] from review actions taken in bad faith or for no legitimate purpose," *Whitley v. Albers*, 475 U.S. 312, 322 (1986), judicial

---

[1] Krocka is a former police officer subject to attack by other inmates if he is housed in the general population.

deference requires that neither judge nor jury freely substitute their judgment for the prison officials' considered decisions.  *See Ort v. White*, 813 F.2d 318, 322, *reh'g denied*, 818 F.2d 871 (11th Cir. 1987).  *See* cases collected at *Sims v. Mashburn*, 25 F.3d 980, 986 (11th Cir. 1994).

Krocka alleges that for six days he was held in a cell with a broken sink and that he was "forced" to drink toilet water and eat his meals in his cell.[2]  Krocka fails to allege that the only liquid available for his consumption was the toilet water (presumably, he was served a beverage with his meals) and that the defendants refused to timely repair the sink.

Krocka alleges that the defendants prevented his accessing the law library.  To state a claim of denial of access to the courts, Krocka must show that he has incurred an "actual injury."  This requirement of an actual injury "derives ultimately from the doctrine of standing. . . ."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  As the Court stated:

> an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense.  That would be the precise analogue of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.  Insofar as the right vindicated by *Bounds [v. Smith]* is concerned, "meaningful access to the courts is the touchstone," *Bounds*, 430 U.S. at 823, 97 S.Ct. at 1495, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

---

[2] Krocka fails to allege that he was physically forced to drink water from the toilet.  Rather, Krocka appears to allege that he was relegated to drinking water from the toilet because the sink was inoperable.

*Lewis*, 518 U.S. at 351.  *Accord Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998) (A plaintiff raising an access to the courts claim "must show actual injury before seeking relief.").  To prevail on an access to the courts claim, Krocka must show how the defendants' conduct precluded his pursing a non-frivolous direct appeal or collateral attack in a criminal proceeding or a challenge to conditions of confinement in a civil proceeding.  *Wilson*, 163 F.3d at 1290.  Krocka cannot meet the actual injury requirement because counsel represents him in the pending criminal case and, consequently, Krocka enjoys no constitutional right of access to a law library in his criminal matter.  Krocka has not alleged that the defendants deprived him of the ability to file a civil action challenging his conditions of confinement.

Krocka alleges that the defendants intercepted and copied his incoming and outgoing mail.  Krocka certainly retains some First Amendment protections, specifically including the right to receive and send mail.  Although incarcerated individuals retain this First Amendment right, the right is not an unrestricted one; prisons may adopt regulations that infringe constitutional rights as long as the regulations are "reasonably related to legitimate penological interests."  *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989), citing *Turner v. Safley*, 482 U.S. 78, 89 (1987).  *See also Procunier v. Martinez*, 416 U.S. 396 (1974).  Whether censorship of an inmate's mail is appropriate depends on the specific circumstances.  Therefore, the screening and censorship of Krocka's mail states a claim upon which relief can be granted if the circumstances did not sufficiently raise security concerns justifying the defendants' intervention.

Finally, Krocka alleges that defendant Peters, the prosecutor in his pending criminal case, was involved in the decision to interfere with his mail and the monitoring of his telephone calls. Prosecutors are entitled to absolute immunity for their quasi-judicial actions undertaken within the scope of their authority as an advocate. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Jones v. Cannon*, 174 F.3d 1271, 1281-82 (11th Cir. 1999). Krocka argues that because Peters' actions were investigatory and beyond her prosecutorial duties, she is not entitled to absolute immunity. This allegation could state a claim.

Accordingly, the motions to dismiss (Doc. 5 & 6) are **GRANTED**. However, Krocka has thirty (30) days to file an amended complaint correcting the noted deficiencies. The failure to timely do so will result in the dismissal of this action.

ORDERED in Tampa, Florida, on September 22, 2005.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

SA/ro